**Jesus RUIZ–RODRIGUEZ,
Plaintiff, Appellant,**

v.

**Dr. Wallace A. COLBERG–COMAS, et al., Defendants, Appellees.**

**No. 88–1717.**

United States Court of Appeals,
First Circuit.

Submitted Aug. 1, 1989.

Decided Aug. 15, 1989.

---

Arturo Aponte Pares and Samuel Gracia Gracia, Caguas, P.R., on brief, for plaintiff, appellant.

Luis Berrios–Amadeo and Cancio, Nadal & Rivera, San Juan, P.R., on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

A district court jury found for plaintiff Jesus Ruiz–Rodriguez on his malpractice claim but awarded no damages. After the district court denied plaintiff's motion for a new trial and restricted his recovery of expert witness costs to those enunciated in 28 U.S.C. § 1821, plaintiff brought this appeal. We affirm.

On the morning of June 21, 1985, Jesus Ruiz–Martinez became ill. His wife contacted Dr. Wallace Colberg–Comas, who visited the couple's home, examined Mr. Ruiz–Martinez, and prescribed various forms of medication. As the day progressed, however, Mr. Ruiz–Martinez's condition worsened until 7:30 p.m., when Dr. Colberg–Comas referred him to the Yaucao Regional Hospital for treatment. Mr. Ruiz–Martinez died on the way to the hospital.

In June of 1986, plaintiff Jesus Ruiz–Rodriguez, a citizen of New York and son of Mr. Ruiz–Martinez, brought this diversity action in the United States District Court for the District of Puerto Rico against Dr. Colberg and his alleged insurers, Corporacion Insular de Seguros and Administracion del Fondo de Compensacion al Paciente. Ruiz–Rodriguez alleged malpractice and sought damages in excess of $75,000 for the "extreme mental anguish" he suffered as a result of his father's unexpected death.

The trial occurred in January 1988. Each side presented expert testimony on the issue of malpractice. On the issue of damages, Ruiz–Rodriguez offered uncontradicted and corroborated testimony that

he loved and admired his father and felt despondent upon learning of his father's death. He further testified that he received some psychiatric counseling to deal with his depression. On cross-examination, Ruiz–Rodriguez admitted he had rarely seen his father in recent years and that his alleged depression had not prevented him from obtaining a new job as a mortgage broker almost immediately following his father's death.

The district court submitted the case to the jury. During the course of deliberations, the jury presented the judge with the following written question: "We are confuse. [sic] Let us know if this trial is for mal-practice [sic] or damages suffered by Mr. Jesus Ruiz Rodriguez." After consulting with counsel, the judge responded, "This case is for medical malpractice. Accordingly, you should determine pursuant to my instructions whether medical malpractice was incurred or not. If you find that there was medical malpractice, then you must determine whether or not Jesus Ruiz–Rodriguez, son of the deceased, Jesus Ruiz Martinez, suffered any damages."

The jury eventually reached a verdict, finding for the plaintiff but stating the amount of damages awarded as "none." The district court denied plaintiff's motion for a new trial on the issue of damages and refused plaintiff's request for expert witness costs above the statutory amount set forth in 28 U.S.C. § 1821.

■ On appeal, Ruiz–Rodriguez contends that the lower court abused its discretion in denying his new trial motion. For us to overturn the district court and direct the granting of a new trial, we must find the jury's verdict so against the great weight of the evidence as to constitute a manifest miscarriage of justice. *See Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1333 (1st Cir.1988). Ruiz–Rodriguez maintains that the uncontradicted evidence concerning his personal reaction to his father's death compelled the jury to find that he suffered at least some compensable injuries.

■ We are unable to agree. In Puerto Rico, a plaintiff seeking compensatory damages for mental suffering must show that in "some *appreciable* measure the health, welfare and happiness of the claimant were *really* affected." *Moa v. Commonwealth*, 100 P.R.R. 572, 585–86 (1972) (emphasis added). In the present case, it was the jury's duty to weigh plaintiff's testimony that he was close to his father and became depressed and despondent, against evidence that they had rarely seen one another in recent years and that plaintiff had begun a new job right after his father's death. We cannot say that on such a record a reasonable jury was bound to find that the father's death had affected plaintiff's health, welfare and happiness in some appreciable measure. The trial judge, whose opportunity to see and hear the witnesses deserves our careful respect, was satisfied to maintain the jury's determination. We find no manifest miscarriage of justice.

Ruiz–Rodriguez's reliance on cases in which a jury ignored uncontradicted evidence of substantial injuries is misplaced. *See, e.g., McKinzie v. Fleming*, 588 F.2d 165, 167 (5th Cir.1979) (per curiam) (ordering new trial jury where jury found liability but awarded no damages despite undisputed evidence of substantial physical injuries); *Parker v. Wideman*, 380 F.2d 433, 437 (5th Cir.1967) (ordering new trial where "there was uncontroverted and unimpeached testimony that the appellant sustained substantial injuries as a result of the accident, and no evidence was adduced which would support the jury's finding that the appellant sustained no damages ...)." Here, the evidence of damage was far more equivocal. Plaintiff's claim of serious psychological injury cannot be said to have been proven to the degree that a reasonable jury had to believe it. Rather the jury could have concluded that whatever sadness Ruiz–Rodriguez experienced as a result of his parent's death did not rise to the level of compensable damages.

A jury's award of zero damages, where such has a rational basis in the record, is commonly viewed as, in effect, a judgment for the defendant. *See Poulin Corporation v. Chrysler Corporation*, 861 F.2d 5,

**18**

7 (1st Cir.1988) ("Since the court has found, we believe warrantable, that the 'jury's award of zero damages has a rational basis on the record,' it ... follows that plaintiff has failed to establish an essential part of its proof, and judgment should have been entered for defendant."). As the evidence here allowed a reasonable jury to conclude that Ruiz–Rodriguez incurred no compensable injuries and therefore was entitled to no damages, the district court did not abuse its discretion in denying Ruiz–Rodriguez's motion for a new trial.

Ruiz–Rodriguez also urges that a new trial is warranted because the district court failed to charge the jury with *"Moa type"* instructions to the effect that people naturally suffer when a relative is injured or dies. *See Moa v. Commonwealth*, 100 P.R.R. 572, 586 (1972) ("For a father to morally suffer for the mishap of his son is, in general terms, an ordinary habit of life, an unavoidable psychic process in every normal human being.").

■ We reject this argument. Plaintiff did not object at trial to the court's failure to give such an instruction. He, therefore, waived his right to raise this matter on appeal. *See* Fed.R.Civ.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."); *Wells Real Estate v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 809 (1st Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988).

■ Moreover, even if plaintiff had made a timely objection at trial, we do not believe the court would have been required to give the requested instruction. In *Moa* the Supreme Court of Puerto Rico stressed that not *all* natural suffering is compensable:

"But, since pain and suffering cannot be object of quotation, to determine the reasonable value of such moral damages it is necessary that the claimant, in each case, bring the necessary factors of evidence to evaluate them fairly and adequately, showing it is not a question of a simple and passing affliction, but that, in some appreciable measure the health, welfare, and happiness of the claimant were really affected...."

*Moa*, 100 P.R.R. at 586.

The district court correctly informed the jury of all the elements of plaintiff's cause of action under Puerto Rico law, including that a person can suffer from other people's misfortune.

Finally, Ruiz–Rodriguez asserts that the district court erred in refusing to allow his recovery of expert witness costs to exceed the statutory fee of $30 per day set forth in 28 U.S.C. § 1821. This argument, being contrary to controlling precedent, is without merit. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 2496, 96 L.Ed.2d 385 (1987) ("We hold that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 ..."); *Bosse v. Litton Unit Handling Systems, Etc.*, 646 F.2d 689, 695 (1st Cir.1981) (reversing district court's allowance of expert witness costs above statutory amount in diversity case); *Paul N. Howard Co. v. Puerto Rico Aqueduct & Sewer*, 110 F.R.D. 78, 82 (D.P.R.1986). *Cf. Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1348 n. 13 (1st Cir.1988) (noting that a diversity court may allow costs for expert witnesses only in cases in which, unlike "routine diversity cases," the prevailing party possesses a state law entitlement to expert fees which is "an integral part of the substantive state-law remedy for [that] particular wrong.").

*Affirmed.*