William **MELÉNDEZ**, Plaintiff

v.

**SAP ANDINA Y DEL CARIBE, C.A., et al., Defendants.**

Civil No. 05–1778 (ADC).

United States District Court, D. Puerto Rico.

Sept. 24, 2007.

William E. Melendez, San Juan, PR, pro se.

Ana M. Santiago–Ramirez, Jose F. Benitez–Mier, Luis A. Nunez–Salgado, O'Neill & Borges, Juan J. Casillas–Ayala, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

AIDA M. DELGADO–COLÓN, District Judge.

On July 14, 2005, Plaintiff, William Meléndez ("Plaintiff" or "Meléndez") filed this action against Defendants, SAP Andina y del Caribe, Pedro Muñoz and César Ovideo ("Defendants"), seeking monetary and injunctive relief for alleged national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 et. seq. Plaintiff also brings supplemental state law claims pursuant to Puerto Rico's anti-discrimination statute, Law 100. 29 L.P.R.A. § 146. Plaintiff alleges, in essence, that SAP Andina refused to hire

him because of his national origin and age. (**Docket No. 1**).

Now before the Court are Plaintiff's objections (**Docket Nos. 134 & 135**) to the report and recommendations ("R & Rs") (**Docket Nos. 129 & 130**) issued by Magistrate–Judge, Camille Vélez–Rivé ("Magistrate–Judge" or "Magistrate–Judge Vélez") on August 13, 2007, which recommended granting Defendants' Motion for Summary Judgment (**Docket No. 87**) and three motions to dismiss pursuant to Federal Rule of Civil Procedure 37. (**Docket Nos. 83, 84, 117**).[1] Defendants oppose the objections. (**Docket No. 136**).

After reviewing the R & Rs, objections, pleadings, statements of fact, exhibits and memoranda in support and opposition to Plaintiff's objections (**Docket Nos. 83, 84, 87, 88, 121, 129, 130, 134 & 135**), the Court adopts the R & Rs, in full, thereby granting Defendants' Motion to for Summary Judgment and motions to dismiss pursuant to FRCP 37.

## I. Factual and Procedural Background

The Court recounts the factual and procedural background necessary to address Plaintiff's objections. A more comprehensive discussion of the travel of this case, including the heavy motion practice relating to various motions relating to non-compliance with discovery and court orders appears in the R & R addressing the Rule 37 motions. (**Docket No. 130**).

At the commencement of this action, Plaintiff was represented by counsel, Enrique A. Báez ("Báez") and Miguel A. Cuadros ("Cuadros"). (**Docket Nos. 1, 20**). However, on December 9, 2005, Báez and Cuadros sought leave to withdraw representation. (**Docket No. 20**). Before

leave was granted, the Judge assigned to the case at the time, Judge Carmen Consuelo Cerezo, ordered counsel to provide Plaintiff's mailing address, presumably in order to receive service of documents. (**Docket No. 23**).[2] A second motion to withdraw representation was filed and granted on March 6, 2006. (**Docket No. 30**).

On March 16, 2006, Plaintiff, appearing pro-se, filed a motion requesting permission to file motions and documents through the court's electronic filing system. (**Docket No. 32**). The Court granted the motion and directed Plaintiff to "contact the pro-se office for assistance with the filings of pleadings." (**Docket No. 43**).

On June 1, 2006, a status conference was held. Plaintiff was urged to retain counsel and provided twenty days in which to do so. The Court also encouraged him to review the Rules of Civil Procedure and Local Rules. (**Docket No. 58**). On July 3, 2006, Plaintiff requested an extension of time to oppose a pending motion to dismiss (for discovery violations) in order to retain counsel. (**Docket No. 64**). Three days later, the morning Plaintiff was scheduled to appear at his deposition, Plaintiff filed another motion informing the court that he had identified counsel to retain but required more time to secure representation. (**Docket No. 64**). The Court denied the motion, advising Plaintiff that as stated in the last conference, no further continuances were to be allowed and that he had to appear for taking of his deposition. (**Docket No. 66**). Plaintiff did not appear and Defendants again moved to dismiss. (**Docket No. 67**).

---

1. The claims against the other co-defendants were dismissed for lack of timely service of process. (**Docket No. 60**).

2. On April 6, 2006, the case was transferred to the undersigned as part of her new caseload. (**Docket No. 35**).

At this stage, rather than dismissing the action, the Court ordered Plaintiff to show cause why sanctions should not be imposed for his failure to appear at the deposition. (**Docket No. 69**). Plaintiff, through newly retained counsel, José R. Cintrón ("Attorney Cintrón"), requested that the case not be dismissed and offered to pay costs associated with the non-appearance. (**Docket No. 71**).

On August 23, 2006, the Court awarded costs of $1,304 to Defendants and noted:

> While plaintiff counsel argues that miscompliance was due to plaintiff's inability to retain counsel, it is an undisputed fact that at the conference held on June 1, 2006, the Court clearly warned plaintiff of his duty to appear at the scheduled deposition even if still unable to retain counsel. Besides, the record clearly reflects that plaintiff has failed, in spite of repeated instructions and explanations of his role as *pro se litigant,* to comply with instructions and orders regarding discovery .... and depositions.

> \* \* \*

> While co-defendants have moved, twice; for dismissal of the action, this Court while not imposing the ultimate harsher sanction (dismissal), sanctions plaintiff to pay and reimburse defendants.... (**Docket No. 74**)

On September 26, 2006, Attorney Cintrón filed a motion to withdraw, noting that his client had asked him to withdraw, and further requested 30 days for Plaintiff to again find and retain counsel. (**Docket No. 82**).

On October 6, 2006 and November 21, 2006, Defendants filed two more motions to dismiss on the grounds that Plaintiff failed to again appear at another scheduled deposition and pay the previously assessed monetary sanction. (**Docket Nos. 83 & 84**).

On November 22, 2006, the Court granted Attorney Cintrón's motion to withdraw and allowed Plaintiff until December 30, 2006 to retain new counsel. The Court warned that "[F]ailure to do so will compel him to litigate his own case. Under such scenario, plaintiff will be subjected to the Local Rules and Rules of Civil Procedure as any other litigant represented by counsel. Plaintiff has been similarly warned in prior instances. Plaintiff shall subject himself to deposition prior to January 20, 2007.... Failure to abide will prompt dismissal of the action." (**Docket No. 85**). In light of this one last opportunity afforded to Plaintiff, the Court held Defendant's motion to dismiss in abeyance. (**Docket No. 86**).

That same day, Defendants filed a Motion for Summary Judgment. (**Docket Nos. 87 & 88**). Defendants argued, in substance, that Plaintiff could not establish that he had applied for the position sought, much less able to demonstrate that he was qualified for the position. *Id.* Although Plaintiff's response to the motion was due by December 5, 2006, he did not submit an opposition. On December 12, 2006, Defendants filed a motion requesting that the motion be deemed unopposed. (**Docket No. 89**).

On December 31, 2006, Plaintiff, appearing pro-se, sought to strike from the record the Motion for Summary Judgment and other motions, arguing, among other things, that he had not been served with any case filings since September 27, 2006. (**Docket No. 91**). In response, Defendants submitted copies of emails showing that courtesy copies of filings had been sent to Plaintiff. (**Docket No. 95**).

On June 26, 2007, the Court referred all pending motions to dismiss and the Motion for Summary Judgment to Magistrate-

Judge Vélez for the issuance of reports and recommendations. (**Docket No. 124**). Thereafter, on August 13, 2007, Magistrate–Vélez issued an R & R, recommending, *inter alia,* that the Court grant the Motion for Summary Judgment on the grounds that Plaintiff failed to establish a *prima facie* case of age or national origin discrimination. *Id.* Specifically, Magistrate–Vélez found the lack of evidence that Plaintiff had applied for employment with SAP Andina or, even assuming that he had applied, that he was qualified for the position to be fatal to both the age and national origin discrimination claims. *See* Docket No. 129 at 11–12, 15. The Magistrate–Judge also recommended that the Court exercise pendant jurisdiction and dismiss the state law claim for essentially the same reason. *Id.* at 19.[3]

On the same date, Magistrate–Vélez issued an R & R recommending, in the alternative, that the Court grant the motions to dismiss pursuant to Rule 37. (**Docket Nos. 83, 84, 117, 130**). Although these motions were now most likely mooted by the Motion for Summary Judgment, the Magistrate–Judge nevertheless concluded that dismissal of the action pursuant to Rule 37 was also appropriate. (**Docket No. 130**). In so finding, the Magistrate Judge noted that Plaintiff had "been apprised on numerous occasions that his lack of diligence, failure to comply with the orders of the court, and his challenged attitude in not making himself available for depositions, were subject to sanctions, including dismissal" and found that "in consideration of the historical trend followed by plaintiff Meléndez in this case, it is recommended that co-defendant's requests for dismissal be GRANTED." *Id.* at 6–7.

As noted above, Plaintiff objected to both R & Rs' and Defendants submitted an opposition. (**Docket Nos. 134, 135, 136**).

## II. Standard of Review for Objections to a Report and Recommendation

██ A District Court may refer pending motions to a Magistrate–Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(a). Any party adversely affected by the recommendation issued may file written objections within ten days of being served with the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule may preclude further review by the district court and the court of appeals. *See Santiago v. Canon U.S.A. Inc.,* 138 F.3d 1, 4 (1st Cir.1998); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992). Similarly, a party objecting to a report and recommendation is "not entitled to a de novo review of an argument never raised" before the magistrate-judge. *Borden v. Sec. of Health and Human Svcs.,* 836 F.2d 4, 6 (1st Cir.1987).

██ In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-

---

**3.** On January 21, 2007, Plaintiff sought to amend the complaint to include a RICO, 18 U.S.C. § 1961, et. seq., and racial discrimination claim, 42 U.S.C. § 1981, which Magistrate–Vélez duly denied. (**Docket Nos. 102,** 125). Thereafter, Plaintiff requested that this Court reconsider the motion and set aside the Magistrate's order. (**Docket No. 126**). Said motion is without merit and as such, the request for reconsideration is denied.

judge." 28 U.S.C. § 636(a)(b)(1). *See Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodríguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). Hence, the Court may accept those parts of the report and recommendation to which the plaintiff does not object. *See Hernández–Mejías v. General Elec.*, 428 F.Supp.2d 4, 6 (D.P.R.2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F.Supp.2d 114, 125–126 (D.R.I.2004)).

## III. Plaintiff's Objections

Since both of Plaintiff's objections to each R & R are nearly identical, the Court addresses them concurrently. *See* Docket Nos. 134 & 135.

As best as the court can discern, Plaintiff first objects on the grounds that after the withdrawal of counsel Cintrón, the case was stayed. *See* Docket Nos. 134 at ¶ 1; 135 at ¶ 1. Specifically, he avers that the case had been stayed until from September 27, 2006, up until December 31, 2006, when he again filed an appearance assuming his own representation. *See* Docket Nos. 134 at ¶¶ 3, 5; 135 at ¶¶ 3–4. The Court finds this argument lacks merit inasmuch as the Magistrate–Judge's order clearly provides an extension of time to file dispositive motions but does not extend to the time to oppose any pending dispositive motions. *See* Docket No. 81. Furthermore, as set forth above, the Court provided ample warnings to Plaintiff that adherence to deadlines would be required. Actually, the Court even indulged and afforded plaintiffs numerous opportunities to comply with discovery requests,

pretrial schedule and court orders. This, to no avail.

Plaintiff also avers that Defendants improperly continued to serve him at his old email and postal address. *See* Docket Nos. 134 at ¶ 8, 135 at ¶ 8. Thus, according to Plaintiff, the filings from September 27, 2006 up until December 31, 2006 should be deemed ineffectual. *See* Docket No. 135 at ¶ 8.[4]

In response, Defendants counter that the record clearly established that Plaintiff was duly notified of all the motions and documents filed by Defendants as well as the orders entered by the Court.[5] First, Defendants point out that it was not until November 22, 2006 that Plaintiff's counsel withdrew. *See* Docket No. 85. As such, Plaintiff should be deemed to have been aware, through counsel, of the motions to dismiss for discovery violations appearing at Docket Numbers 83 and 84. Second, Defendants argue that they notified Plaintiff of the Motion for Summary Judgment (as well as other filings) through his personal email address. *See* Docket Nos. 136–2, 136–3. Defendants point out that this email address was active and valid as demonstrated by the fact that on the same day, Plaintiff confirmed the receipt of another document by Defendants through that same email address. *See* Docket No. 136–4. The record clearly shows that plaintiff, currently a law student, was clearly aware of his duties as pro-se litigant. Actually, the Court directly advised plaintiff of such obligations at a status conference. Thereafter, numerous opportunities were afforded to enable plaintiff's compliance.

---

**4.** In the objections, Plaintiff also argues that Defendants failed to provide him with transcripts of his first and third depositions as well as the opportunity to make any corrections to the record. *See* Docket No. 134 at ¶ 9–10.

**5.** Defendants also generally point out that Plaintiff has failed to properly file "specific, written objections to the proposed findings and recommendations" of the Magistrate–Judge in accordance with Fed.R.Civ.P. 72(b).

Based on the foregoing, the Court finds Plaintiffs' objections to be without merit. To the extent Plaintiff required an extension of time to respond to the substance of the Motion for Summary Judgment, the record, based in part on Plaintiff's incessant motion practice, makes clear that he had the means and capacity to do so. Furthermore, the Court finds Plaintiff's objections based on lack of notice appear to be disingenuous as he had notice of the motions to dismiss, Motion for Summary Judgment as well as other filings as far.[6]

Lastly, with respect to the substance of the Motion for Summary Judgment, the Court notes that notwithstanding that the motion is deemed unopposed, a court remains "obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991). The record reflects that the Magistrate–Judge duly discharged this obligation when it accepted Defendants' version of the facts, as supported by the exhibits, and proceeded in applying the relevant law. (**Docket Nos. 87 & 88**).

Accordingly, the Court adopts, entirely, the R & Rs relating to Defendants' Motion for Summary Judgment and adopts the reasoning therein as its own. The Court, as well adopts the R & R relating to the three motions to dismiss pursuant to Fed. R.Civ.P. 37.

**IV. Conclusion**

After considering Plaintiff's objections, the pleadings on record and the R & Rs, the Court hereby **ADOPTS**, entirely, the R & Rs now before the court. (**Docket Nos. 129 & 130**). Accordingly, Defendants' Motion for Summary Judgment (**Docket Nos. 87**) and motions to dismiss pursuant to Fed.R.Civ.P. 37 (**Docket Nos. 83, 84, 117**) are hereby, **GRANTED**. Plaintiff's federal and state law claims are **DISMISSED**, with prejudice. The Clerk is to enter judgment accordingly.

**SO ORDERED.**

**REPORT AND RECOMMENDATION**

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

**INTRODUCTION**

Plaintiff William Meléndez ("Meléndez" or "plaintiff") filed this federal action against codefendants SAP Andina y del Caribe ("SAP" or "SAP Andina"), Pedro Muñoz and César Oviedo ("co-defendants"), seeking redress and monetary damages for alleged discrimination under Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in employment Act ("ADEA"), 29 U.S.C.A. § 621 *et seq.*[1] Meléndez also raises state law claims under the Commonwealth of Puerto Rico anti-discrimination statute, to wit, Law No. 100, 29 L.P.R.A. § 146. In essence, plaintiff Meléndez asserts SAP

---

**6.** To the extent a court may exercise its discretion in granting an unknowing pro-se litigant the benefit of the doubt with the construction of pleadings and certain procedures, the record makes clear that Plaintiff was advised of his responsibilities, placed on notice of the Federal Rules of Civil Procedure and Local Rules, actively filed and responded to numerous motions before this Court—yet displayed a marked recalcitrance towards his discovery obligations and compliance with court orders. *See Instituto de Educación Uni-*

*versal Corp. v. U.S. Dep't ofEduc.,* 209 F.3d 18, 23 (1st Cir.2000); *Marcello v. Maine,* 489 F.Supp.2d 70, 77–78 (D.Me.2007)(finding that given the history of the case it was not unreasonable to require plaintiffs to comply with the local rules).

**1.** Claims against two other co-defendants were dismissed early on for lack of timely service of process.

Andina refused to hire him because of his national origin and age.

On November 22, 2006, co-defendants SAP Andina y del Caribe, Pedro Muñoz and César Oviedo submitted a Motion for Summary Judgment and Memorandum of Law in Support Thereof ("Motion for Summary Judgment") and a Statement of Uncontested Facts ("co-defendants Undisputed Statement") as to plaintiff's Complaint for alleged discrimination by reason of age and national origin (**Docket Nos. 87 and 88**).

Co-defendants submit in their Motion for Summary Judgment that plaintiff Meléndez' claims should be dismissed since he failed to demonstrate that (*I*) he was a qualified applicant and/or (*ii*) that he requested employment for purposes of Title VII or ADEA. Additionally, codefendants submit plaintiff Meléndez provided helpdesk consultant type services to SAP Andina as an independent contractor from on or about July 2004 till August 2004, and thereafter for an extended period as a SAP recommended contractor with SAP Business Partner, Evertech. It is co-defendants' contention that plaintiff Meléndez never applied for employment with SAP Andina and therefore, cannot ask for relief under either Title VII or ADEA. Co-defendants further submit that even assuming *arguendo* that there was an open position at SAP Andina and that Meléndez indeed applied for it, he cannot satisfy the burden of demonstrating that he was a qualified candidate for the position of Project Manager averred in the Complaint.

Plaintiff Meléndez failed to file a timely opposition to co-defendants' Motion for Summary Judgment or to request an extension of time pursuant to Fed.R.Civ.P.

56 and local rules 7.1(b) and 56(c) and (e) of the District Court of Puerto Rico.[2]

On June 26, 2007, the Court referred the motions to dismiss and for summary judgment to this Magistrate Judge for report and recommendation (**Docket Nos. 83, 84, 87 and 117**).

As explained herein below, we conclude that lacking direct evidence of discrimination, plaintiff Meléndez has failed to establish a *prima facie* case of age and national origin discrimination. Thus, summary disposition of plaintiff's claims is deemed appropriate.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts" and that he is "entitled to judgment as a matter of law." *Vega–Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

After the moving party has satisfied this burden, the *onus* shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or

---

**2.** Plaintiff's response to the motion for summary judgment was due by December 5, 2006. It is noted plaintiff is now representing himself and has been admonished on several occasions for his failure to appear and/or comply with the scheduling in this case. (Docket Nos. 69, 74, 85, 125).

"trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood. . . ." *Greenburg v. Puerto Rico Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997).

Finally, when considering summary judgment motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted).

These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a "smoking gun.". *See Pearson v. First N H Mortgage Corp.,* 200 F.3d 30, 35, n. 2 (1st Cir.1999). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

Finally, when a motion for summary judgment remains unopposed, as in the instant case, the district court may grant summary judgment, only if appropriate. A district court may not automatically grant a motion for summary judgment simply because the opposing party has failed to comply with a local rule requiring a response within a certain number of days. *See Cosme–Rosado v. Serrano–Rodríguez,* 360 F.3d 42, 43 (1st Cir.2004) (*finding* that failure to comply with Local Rule 311.12 admits the veracity of the movant's version of material facts); *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 7–8 (1st Cir.2002); *see also Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir. 2000).[3]

## UNCONTESTED FACTS

■ After considering the evidence presented in the unopposed Motion for Summary Judgment and the record, the following facts are considered uncontested[4]:

---

3. *See, e.g., United Parcel Serv., Inc. v. Flores–Galarza,* 318 F.3d 323, 330 & n. 10 (1st Cir. 2003); *Corrada Betances v. Sea–Land Serv., Inc.,* 248 F.3d 40, 43 (1st Cir.2001); *Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33–34 (1st Cir.2001); *Ruiz Rivera v. Riley,* 209 F.3d 24, 27–28 (1st Cir.2000).

4. In the absence of a timely response from the nonmoving party, the district court can "accept as true all material facts set forth by the moving party with appropriate record support". *Jaroma v. Massey,* 873 F.2d 17 (1st Cir.1989). In the present case, resting primarily in plaintiff's own admissions during his deposition, the moving party has met its

1. SAP Andina y del Caribe is a corporation dedicated to selling and marketing its computer software. SAP also provides training and consulting services for its clients. (*Exhibit 2, Unsworn Declaration under Penalty of Perjury of SAP Gen. Manager, José Otero (hereinafter "Otero's Statement"), ¶ 3; Exhibit 3, Unsworn Declaration under Penalty of Perjury of SAP Consultant Director, César Oviedo (hereinafter "Oviedo's Statement"), ¶ 3* )[5].

2. Plaintiff Meléndez is a resident of Puerto Rico. Meléndez was at the relevant times in 2004, a law student at the University of Puerto Rico. He took courses during the day and other times at night. (*Complaint ¶ 12; Exhibit 1, Meléndez' depo. of 9–15–2006 (hereinafter "Meléndez' depo.") pp. 108 l. 23–25; 112 l. 15–21* ).

3. In January 2004, Meléndez, out of his own initiative, incorporated Critical Chain Consulting, Inc., a local corporation, in order to seek work as an independent contractor in information systems and as an accounting and CPA consultant. (*Exhibit 1, Meléndez' depo. p. 53 l. 8–13* ).

4. Meléndez had no prior experience with the implementation of SAP systems. Due to plaintiff's lack of financial resources to formally become certified in additional SAP applications, SAP Andina representatives provided plaintiff with teaching materials, without any charge. This would enable plaintiff to instruct himself in certain public sector SAP applications, so as to serve his clients through his corporation, Critical Chain Consulting, Inc. (*Exhibit 1, Meléndez' depo. pp. 24 l. 2–25; 25 l. 1–10; 98 l. 21–25; 99 l. 1–3, 13–25* ).

5. Meléndez was certified in only one of the financial aspects of the SAP system;

namely, Finance and Controlling ("FICO"). He was not certified in other areas of the SAP system, such as Materials Management, Sales and Distribution. (*Exhibit 1, Meléndez' depo. pp. 24 l. 2–25; 25 l. 1–10; 97 l. 11–16; 98 l. 2–17; 163 l. 20–25* ).

6. In 2004 and 2005, Meléndez lacked the work experience in SAP system throughout all the different stages such as planning, implementation and maintenance of SAP applications. (*Exhibit 1, Meléndez' depo. pp. 83 l. 20–23; 84 l. 13–16* ).

7. Meléndez had never participated in a SAP based implementation from beginning to end ("A to Z"). (*Exhibit 1, Meléndez' depo. p. 165 l. 4–6* ).

8. Plaintiff Meléndez' sole experience with SAP systems was then restricted to work after the planning and implementation stages or to so called "help desks", where the consultant assists users in *ad hoc* situations which arise during the actual operational phase. (*Exhibit 1, Meléndez' depo. p. 25 l. 14–17* ).

9. Meléndez had experience in the implementation of other manufacturer's software but not with SAP information systems applications. (*Exhibit 1, Meléndez' depo. p. 24 l. 11–15* ).

10. Meléndez aspired to a position as a Project Manager with SAP in Puerto Rico. (*Complaint at ¶ 19* ). Meléndez did not satisfy the experience and educational requirements set forth in the Project Management Job Descriptions, Version 0.6, for a position as a SAP Andina Project Manager. Meléndez does not have PMP certification or PMM methodology Certification, or the ASAP Toolset Proficiency. (*Exhibit 3, Oviedo's Statement ¶ 6* ).

---

burden to demonstrate undisputed facts, entitling it to summary judgment as a matter of law. *De la Vega v. San Juan Star, Inc.,* 377 F.3d 111 (1st Cir.2004).

**5.** All exhibit numbers refer to co-defendant's unopposed Statement of Uncontested Facts and their Motion and Memorandum in Support of Motion for Summary Judgment.

11. During the relevant times, Meléndez never applied for a job, position or vacancy as an employee at SAP Andina y del Caribe. (*Exhibit 1, Meléndez' depo. pp. 70 l. 20–24; 72 l. 6–8; 72 l. 16–20; 73 l. 13–18; 75 l. 17–21; 79 l. 9–20; 144 l. 17–25* ).

12. A SAP Project Manager needs to be knowledgeable and have experience in various projects covering full cycles of SAP software planning, implementation and maintenance. (*Exhibit 1, Meléndez' depo. pp. 163 l. 20–25 to 164 l. 1–19; Exhibit 3, Oviedo's Statement, ¶ 4* ).

13. Meléndez never asked management if SAP Andina in Puerto Rico had any openings for employment in 2004 nor what was the salary range of any existing employment vacancies at SAP Andina. (*Exhibit 1, Meléndez' depo. pp. 73 l. 19–25; 74* ).

14. Meléndez never requested employment for a specific position at SAP Andina y del Caribe. He merely allegedly responded to a posting at SAP US' (a separate corporation) website. SAP U.S. employment applications are neither shared nor received by SAP Andina y del Caribe. (*Exhibit 1, Meléndez' depo. pp. 75 l. 24–25; 76 l. 1–13; Exhibit 2, Otero's Statement, ¶ 4; Exhibit 3, Oviedo's Statement, ¶ 5* ).

15. By January 2004, plaintiff Meléndez initiated an approach to Mr. José Otero and later to Mr. César Oviedo, in order for them to provide him with referrals as an outside consultant through his corporation, Critical Chain Consulting, Inc. Mr. José Otero and Mr. César Oviedo, without any obligation to do so, referred plaintiff as an outside consultant to Master Foods and Evertec. (*Exhibit 1, Meléndez' depo. pp. 95 l. 11–23; 96 l. 5–8* ).

16. Meléndez provided services to SAP Andina's client Master Foods as an independent contractor from on or about July 2004 to August 2004, and thereafter for an extended number of months as a recommended contractor with SAP's business collaborator, Evertech. Meléndez also performed similar post-implementation work at the Municipio de Carolina. This was the full extent of Meléndez' experience with SAP systems. (*Answer to Complaint, ¶ 22, Docket No. 17; Exhibit 1, Meléndez' depo. pp. 58 and 95 l. 15–23* ).

17. It is a common usage within the information systems industry for a company which owns and sells software to have business collaborators (known as "Partners" in the industry) to do the implementation work. (*Exhibit 1, Meléndez' depo. p. 47 l. 7–12* ).

SAP Andina y del Caribe works with the business concept of business "Partners." (*Exhibit 1, Meléndez' depo. p. 48 l. 4–6* ).

18. When Plaintiff Meléndez created and incorporated Critical Chain Consulting, Inc. in 2004, he sought to become a business Partner of companies such as Oracle and SAP, as an independent contractor, to do work within his area of experience. (*Exhibit 1, Meléndez' depo. p. 53 l. 8–13* ).

19. SAP Andina's policy is to comply with all federal and local anti-discrimination and immigration statutes. (*Exhibit 2, Otero's Statement, ¶ 5* ).

20. All SAP Andina's employees in the United States and Puerto Rico, without exception, are authorized to work in the United States and are either United States nationals or U.S. resident nationals, or alternatively have been lawfully admitted to the United States and hold a valid authorization to work in Puerto Rico. (*Exhibit 2, Otero's Statement, ¶ 6* ).

21. Meléndez admitted that at some relevant point, he applied for a job at Bearing Point, an independent Internet website, for a SAP systems consultant

which required a minimum of four (4) years with SAP experience. He further admitted he did not have four (4) years of work experience in installation of SAP systems throughout all the different stages. He never heard back from that prospective employer, Bearing Point. (*Exhibit 1, Meléndez' depo. pp. 83 l. 6–23; 84 l. 13–18* ).

22. Meléndez at some relevant point answered various non-SAP employment postings for vacancies involving SAP systems work, but never got back any response. (*Exhibit 1, Meléndez' depo. pp. 84–87* ).

23. During plaintiff Meléndez' deposition, he was unable to specifically and unequivocally identify any of the alleged younger foreign nationals hired by co-defendant SAP Andina in his place. (*Exhibit 1, Meléndez' depo. pp. 145–148* ).

## LEGAL ANALYSIS

### A. Failure to Establish a *Prima Facie* Case of National Origin Discrimination under Title VII.

■ Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et seq.*, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". Lacking direct evidence of discrimination, to facilitate proof of discrimination by a claimant, Title VII cases are analyzed under the *McDonnell Douglas* burden-shifting framework, which requires a plaintiff to adduce some basic evidence to support a *prima facie* case of discrimination, including one based on either national origin or retaliation. *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ To establish a *prima facie* case of national origin discrimination under Title VII a plaintiff must show that: (1) he belonged to a protected class, (2) that he applied and was qualified for the position in question, (3) that he was rejected despite his qualifications, and (4) that the position remained open and the employer continued to seek candidates with similar or lesser qualifications. *McDonnell Douglas, Corp.*, 411 U.S. at 792, 93 S.Ct. 1817; *Hernández Marrero v. Crowley Am. Transp., Inc.*, 206 F.Supp.2d 279 (D.Puerto Rico 2002); *Woods v. Friction Materials. Inc.*, 30 F.3d 255, 259 (1st Cir.1994).

In the instant case, according to the undisputed facts, Meléndez fails to establish a *prima facie* case under Title VII.

■ First, as an initial fatal shortcoming, application for employment is a specific and express requirement under the second prong of the *McDonnell Douglas* test. According to the uncontested facts, Meléndez never applied for a specific position at SAP Andina. Even more, Meléndez did not know nor asked if there were any openings at SAP at the relevant times. In fact, according to Meléndez' own testimony, in January 2004 he incorporated, out of his own initiative, a company called Critical Chain Consulting, Inc., to seek and perform work as an independent contractor as an information systems and accounting consultant.

■ It is well settled that a timely application for employment for a particular vacancy or line or work is a *sine qua non* requirement for a claim of employment discrimination. Absent, as in this case, an application for employment for a particular position or vacancy, a refusal to hire discrimination claim is prone to summary adjudication and collapse. *Vélez v. Janssen Ortho, LLC*, 467 F.3d 802, 807 (1st Cir. 2006) (holding that in the absence of a job

application, there cannot be a failure-to-hire case).

■ Secondly, even assuming *arguendo* that Meléndez applied for a job with SAP Andina, he fails to satisfy the burden of demonstrating that he was a qualified candidate for the position sought as a defendant Project Manager. It is uncontested that Meléndez did not have the work experience on SAP systems throughout all the different stages such as planning, implementation and maintenance. This shows lack in needed experience to lead and direct others in performing these tasks. Even more, according to Meléndez' own testimony and résumé, he also lacked needed formal training. Plaintiff Meléndez was only certified in SAP FICO application and did not have the required certifications for a position as a Project Manager.

Considering plaintiff Meléndez' lack of training and experience in SAP systems applications, this Magistrate Judge finds Meléndez has not established either that he was qualified to perform the Project Manager's position duties alluded to in the Complaint, even assuming he had applied for it. This constitutes a second fatal flaw in plaintiff Meléndez' refusal to hire discrimination claim. Absent the necessary qualifications, co-defendants had no obligation to consider or hire Meléndez. Plaintiff consequently simply cannot establish he was treated less favorably than others. *See Hernández Marrero,* 206 F.Supp 2d at 279.

Plaintiff Meléndez' subjective and conclusory belief that he suffered an adverse employment action as a result of discrimination is not enough to withstand a well pleaded motion for summary judgment and more so, one that has not been duly opposed. *Santiago v. Canon USA, Inc.,* 138 F.3d 1 (1st Cir.1998).

Therefore, absent any direct or circumstantial evidence other than Meléndez' subjective belief that he was discriminated against, the co-defendants are entitled to summary judgment in their favor. *Hernández Marrero,* 206 F. Supp 2d at 279; *Rodríguez v. Potter,* 419 F.Supp.2d 58 (D.Puerto Rico 2006).

As discussed above, plaintiff Meléndez has not presented any direct evidence of discrimination in the record of this case. Further, Plaintiff Meléndez has failed to produce any evidence to sustain a *prima facie* case under Title VII. Thus, it is recommended that codefendants Motion for Summary Judgment as to the alleged discrimination by reason of national origin be **GRANTED.**

**B. Failure to Establish a *Prima Facie* Case of Age Discrimination.**

■ In addition to a lack of *prima facie* Title VII claim, co-defendants argue in the unopposed Motion for Summary Judgment that Plaintiff Meléndez lacks a cause of action under ADEA. In an ADEA failure to hire discrimination suit, plaintiff bears the ultimate burden of persuading the fact finder the employer illegally discriminated by refusing to hire plaintiff on the impermissible age basis.

Similar to the Title VII scenario, absent direct evidence to prove that SAP Andina discriminated against him in his employment attempt because of his age, plaintiff would again have to prove his case through circumstantial evidence by means of the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp.,* 411 U.S. at 792, 93 S.Ct. 1817; *Hernández Marrero,* 206 F.Supp.2d at 279.

■ Under both Title VII and the ADEA, the plaintiff bears the burden of establishing that the defendant discriminated against him because of his age or nationality. *Loeb v. Textron Inc.,* 600 F.2d

1003, 1011 (1st Cir.1979); *Rossy v. Roche Prods.*, 880 F.2d 621, 625 (1st Cir.1989). That ultimate burden consists of proving that his age, or his nationality, was a determinant factor in the employer's decision. *Mesnick v. General Elec. Co.*, 950 F.2d 816 (1st Cir.1991). Plaintiff's mere own subjective belief that he suffered an adverse employment action as a result of discrimination is not enough to withstand a motion for summary judgment. *Santiago v. Canon USA, Inc.*, 138 F.3d at 1.

■ To prevail on a claim under ADEA, a plaintiff must first establish a *prima facie* case under the *McDonnell Douglas* standard. This requires plaintiff to show that (1) he was within a protected class of individuals over 40 years of age; (2) **that he applied and was qualified for a job for which the employer was seeking applicants;** (3) that he was rejected; and (4) that the employer hired someone younger (emphasis supplied). *See Rivera Rodríguez v. Sears Roebuck De P.R., Inc.*, 367 F.Supp.2d 216 (D.Puerto Rico 2005); *Mulero–Rodríguez*, 98 F.3d at 673; *Pages–Cahue v. Iberia Líneas Aéreas de España*, 82 F.3d 533, 536 (1st Cir.1996); *Sánchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir.1994); *Woods*, 30 F.3d at 260.

■ Although co-defendants do not dispute that Meléndez is over 40 years old, and thus within the protected age group, merely belonging to the protected age group of ADEA is, by itself, not enough to give rise to a claim under said statute. *See Rodríguez*, 367 F.Supp.2d at 216; *Hernández Marrero*, 206 F.Supp.2d at 279.

For precisely the same reasons Meléndez fails to satisfy the second prong of his *prima facie* for national origin discrimination, Meléndez fails to fulfill the *prima facie* age discrimination test. Again, it is undisputed, as above discussed, that he never applied for employment with SAP Andina.

Similarly, even if he had applied for employment with SAP Andina, which we have concluded he did not, it is also undisputed that he was not qualified for the job. Additionally, since Meléndez never applied for a job with SAP Andina, consequently he could never have been rejected on account of his age. Hence, plaintiff fails to prove the third prong of an age *prima facie* test as well.

Meléndez alleges that SAP Andina hired younger illegal foreign nationals. Notwithstanding, Meléndez offered no evidence and was unable to identify any of the alleged younger foreign nationals hired by co-defendant SAP Andina.

Absent any direct or circumstantial evidence other than Meléndez' subjective belief that he was discriminated against based on age, defendants are entitled to summary judgment in their favor. *Hernández Marrero*, 206 F.Supp 2d at 279.

Accordingly, it is recommended that co-defendants' unopposed and uncontested Motion for Summary Judgment as to age discrimination claims be **GRANTED.**

**C. State Law Claims under Law No. 100.**

Plaintiff Meléndez also asserts in the Complaint "state law" claims of discrimination arising from the same factual nucleus, under this Court's pendent jurisdiction.

■ The power of the federal court to hear and to determine state law claims depends upon the presence of at least one "substantial" federal claim in the lawsuit. *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991), *citing United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Since "pendent" claims, by definition, consist of state matters over which Congress did not grant

federal courts independent jurisdiction, once the federal question issues are dismissed, federal courts stripped of their support, hesitate to hear them. *Newman*, 930 F.2d at 964; *Hernández Marrero*, 206 F.Supp 2d at 279.

 Pendent jurisdiction allows a district court to entertain both the federal and state law claims if they derived from a "common nucleus of operative facts". *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Quite often considerations of judicial economy dictate having a single trial. *Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130. The pendent jurisdiction doctrine is one of discretion, yet if the federal claims are dismissed before trial "certainly . . . the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. 1130.

 This Court will generally refrain from exercising supplemental jurisdiction over local law claims to the extent that the federal law claims, which vest this court with subject matter jurisdiction, are dismissed as well. *Marrero–Gutierrez v. Molina*, 491 F.3d 1 (1st Cir.2007); *Rodríguez v. Doral Mortgage Co.*, 57 F.3rd 1168, 1177 (1st.Cir.1995). *See also Hernández Marrero*, 206 F.Supp.2d at 279.

 In deciding whether or not to retain jurisdiction on such an occasion, the Court must take into account concerns of judicial economy, convenience, comity and fairness. *Roche v. John Hancock Mut. Life Inc. Co.*, 81 F.3d 249, 256 (1st Cir. 1996).

In *Roche*, 81 F.3d at 256, the Court of Appeals for the First Circuit affirmed the District Court's entry of summary judgment dismissing both the federal and the state claims under Fed. R. Civ. P 56. Plaintiff therein complained that the District Court had erred in exercising jurisdiction over the state claim after deciding

to enter summary judgment dismissing the federal claim. However, the First Circuit rejected the argument, noting that "the litigation had matured well beyond its nascent stages, discovery had closed, the summary judgment record was complete, the federal and state claims were interconnected, and powerful interests in both judicial economy and fairness tugged in favor of retaining jurisdiction." *Id.* at 257. Thus, it concluded that, "the district court appropriately exercised its discretion in retaining jurisdiction over, and disposing of the entire compendium of claims in the case." *Id.*

In the present case, we must determine whether state law claims dismissal shall be with or without prejudice. We conclude that under the particular circumstances of this case dismissal should be with prejudice, as it is evident that for the very same reasons plaintiff's claim of discrimination cannot prevail under federal law, state law claims are fated to failure as well. *Lee Crespo v. Schering Plough Del Caribe, Inc.*, 231 F.Supp.2d 420, 430 n. 45 (D.Puerto Rico 2002), *aff'd* 354 F.3d 34 (1st Cir. 2003); *Landrau v. Caribbean Restaurants*, 14 F.Supp.2d 185 (D.Puerto Rico 1998) (reversed in part 212 F.3d 607 (1st Cir. 2000)).

 Puerto Rico Law 100 of June 30, 1959, as amended, 29 L.P.R.A. § 146 ("Law 100"), *inter alia* prohibits discrimination based on age and national origin. Law No. 100 establishes a presumption of discrimination, when the plaintiff meets his initial burden of producing certain base facts. Much like a Title VII action, under Law 100 plaintiff bears the initial burden of presenting sufficient basic probative evidence that the action complained of was taken without just cause. Therefore, plaintiff must prove three elements: (1) that he was not hired; (2) that the failure to hire was without just cause; and (3)

some basic fact substantiating the type of discrimination alleged. *Díaz Fontánez v. Wyndham Hotel Corp.*, 2001 TSPR 141, 2001 WL 1346759 (2001); *Dávila v. Corporación de P.R. para la Difusión Pública*, 2006 WL 2092570 (D.Puerto Rico 2006), *affd.* 498 F.3d 9 (1st Cir.2007); *Varela Terón v. Banco Santander de Puerto Rico*, 257 F.Supp.2d 454 (D.Puerto Rico 2003) (summary judgment dismissing state discrimination claim along with federal ADEA claim; standards governing the actions are similar); *Baralt v. Nationwide Mut. Ins. Co.*, 251 F.3d 10 (1st Cir.2001).

In *Díaz Fontánez,* 2001 WL 1346759, the Puerto Rico Supreme Court explained that "if the plaintiff does not present sufficient evidence to sustain his or her allegations, the defendant is under no duty to defend itself". *Varela Terón,* 257 F.Supp 2d at 454. The Court interpreted that plaintiff must not only allege unjustified dismissal, but that for the alleged discrimination claim plaintiff must also present some rational basic proof of the adverse employment action without just cause in order to trigger the Law No. 100 presumption of discrimination.

In the circumstances of the instant action, plaintiff Meléndez must present some rational basic proof that he applied for a job and he was a qualified applicant, as part of the second prong of the *Díaz Fontánez* test of basic evidence of unjustified adverse action that will activate the Act 100 rebuttable presumption.

As we have concluded, plaintiff Meléndez' subjective and conclusory belief that he suffered an adverse employment action as a result of discrimination on the basis of national origin or age is simply not enough proof of unjustified adverse action. *Santiago,* 138 F.3d at 1

 The unjustified adverse action that plaintiff must establish as basic evidence to activate the discrimination presumption under local law in a failure to hire claim must necessarily include, similar to under Title VII or ADEA, that (1) plaintiff applied for employment and (2) that he was qualified for the position sought. It is in fact inconceivable for a job applicant to be discriminated against in the refusal to hire context for a position he never applied for; or even if the individual applied if the applicant was simply not qualified.

 Lacking these two elements, application and qualification, Meléndez' state law claims would be avowed to unavoidable dismissal for precisely the same reasons that his federal claims of discrimination cannot prosper; i.e., it is undisputed that (1) plaintiff did not apply for employment and (2) even if we *arguendo* assume he did, he was not qualified for the position he aimed for. When Plaintiff fails to establish unjustified adverse acts required for an actionable discrimination first steps, which are equally applicable under both the federal and state law statutes, judicial economy and fairness requires that both federal and state law claims be finally decided at this forum chosen by plaintiff. The pendent claims cannot be both a sword and a shield, depending on the convenience of either litigant.

Since plaintiff's state law claims of employment discrimination cannot succeed in local courts since he neither applied nor qualified for the employment sought with co-defendants, it is recommended that plaintiff's state law claims be **DISMISSED WITH PREJUDICE.** *Roche,* 81 F.3d at 256.

## CONCLUSION

In view of the foregoing, it is recommended that co-defendants' Motion for Summary Judgment be **GRANTED** in its entirety and, as a consequence thereof, the

federal and state claims be **DISMISSED WITH PREJUDICE.**

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

## REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff William Meléndez ("Meléndez" or "Plaintiff") filed this federal action against codefendants SAP Andina y del Caribe ("SAP" or "SAP Andina"), Pedro Muñoz and César Oviedo ("co-defendants"), seeking redress and monetary damages for alleged discrimination under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in employment Act ("ADEA"), 29 U.S.C.A. § 621 *et seq.* Meléndez also included state law claims under the Commonwealth of Puerto Rico anti-discrimination statute, Law No. 100, 29 L.P.R.A. § 146. In essence, plaintiff Meléndez asserts SAP Andina refused to hire him because of his national origin and age.

On August 13, 2007, co-defendants' unopposed Motion for Summary Judgment, as to plaintiff's Complaint for alleged discrimination by reason of age and national origin, was object of this Magistrate Judge's report and recommendation recommending that summary judgment for co-defendants be GRANTED and dismissing with prejudice Meléndez' federal and state claims because plaintiff has failed to establish the required *prima facie* burden for his federal and state claims. **(Docket Nos. 87, 88, 129).**

The Court also referred for report and recommendation several motions to dismiss by above co-defendants upon plaintiff Meléndez' failure to comply with required discovery or for sanctions for non-appearance at depositions or to comply with the sanctions imposed by the Court for said repeated omissions **(Docket Nos. 83, 84, 117).**[1]

In light of our recommendation as to the summary judgment request, which disposes of all of plaintiff's claims, co-defendants' motions to dismiss should be considered moot for being predicated on failure to comply with discovery requests.

In the alternative, however, a brief discussion follows for which the granting of the Motions to Dismiss pursuant to Rule 37 of the Federal Rules of Civil Procedure is also deemed appropriate.

### PROCEDURAL BACKGROUND

Co-defendants' Motions to Dismiss are predicated on plaintiff Meléndez' failure to consistently comply, notwithstanding several admonishments by the Court, with discovery, depositions and even Court's orders imposing sanctions. Co-defendants' requests are predicated on this Court's discretion to impose dismissal under Rule 37(d) and Rule 41 of Federal Rules of Civil Procedure.

On June 14, 2005, the instant case was filed by plaintiff Meléndez' then retained

1. Plaintiff Meléndez has been admonished on several occasions for his failure to appear and/or comply with the scheduling in this case. (Docket Nos. 69, 74, 85, 125).

counsel, who withdrew initially from representation on December 9, 2005, and once again on January 17, 2006 (**Docket Nos. 1, 20, 24, 28**). Plaintiff Meléndez, who has some legal studies, then continued to file motions *pro-se* and was granted a user ID in the Court's CM/ECM system. The Court set a status and discovery conference where plaintiff was urged to retain services of counsel and was granted an additional period to time to do so. A timetable to conclude depositions was issued (**Docket No. 58**).

Upon the Court's granting plaintiff Meléndez an extension of time to seek legal representation, he was apprised that notwithstanding his *pro-se* status, he remained responsible to reply to pending motions to dismiss and no further extensions were to be granted (**Docket No. 68**). Plaintiff Meléndez was also issued an order to show cause in writing as to why sanctions were not to be imposed for his failure to appear at scheduled and agreed to depositions (**Docket No. 69**). Upon filing of a response to the order to show cause on July 18, 2006, by counsel José R. Cintrón on behalf of plaintiff Meléndez (**Docket No. 71**), defendants proceeded to notify the expenses incurred in plaintiff's aborted deposition (**Docket No. 72**). The Court noted plaintiff Meléndez had failed to attend for a second time a deposition scheduled, although being previously duly warned and had violated the Court's imposed pre-trial schedule and orders. Co-defendants had previously moved for dismissal. However, the Court admonished plaintiff Meléndez it would not impose then the harsher sanction of dismissal and was instead sanctioning plaintiff to pay and reimburse defendants in the amount of $1,304.00. (**Docket No. 74**).

After a status conference was held before this Magistrate Judge on September 27, 2006, counsel for plaintiff withdrew representation (**Docket No. 82**). Co-defendants again reiterated dismissal of the complaint on October 26, 2006, for plaintiff Meléndez' repeated failure to appear at deposition and to comply with the orders of the Court imposed sanctions (**Docket No. 83, 84**). The Court granted plaintiff Meléndez an extension of time on November 22, 2006, to inform his new retained counsel and indicated that failure to do so would compel him to litigate his own case. The Court further admonished plaintiff Meléndez he was still subject to comply with the Local Rules and the Federal Rules of Civil Procedure, warnings it had provided previously. Plaintiff Meléndez was also notified by the Court he was to be deposed prior to January 20, 2007 and deadlines for case management were imposed (**Docket No. 85**). The Court in a separate order indicated it was holding in abeyance co-defendants' Motions to Dismiss as one last opportunity being given to plaintiff (**Docket No. 86**).

The record is consistent in that the Honorable Court had previously admonished plaintiff Meléndez, when attempting to continue *pro-se*, that he had to comply with the orders of the Court or face the consequences, since no further continuances were to be condoned.

Notwithstanding, plaintiff Meléndez thereafter failed to oppose co-defendants' Motion for Summary Judgment or to request a timely extension of time to respond, for which the same was resolved without the benefit of plaintiff's opposition (**Docket No. 129**).

### LEGAL DISCUSSION

Fed.R.Civ.P. 37(b)(2)(C) states in pertinent part that if a party fails to obey an order to provide or permit discovery, the court may impose sanctions (including an order "dismissing the action or proceeding or any part thereof, or rendering a judg-

ment by default against the disobedient party...."). Fed.R.Civ.P. 37(b)(2)(c).

█ Fed.R.Civ.P. 37 provides that whatever sanctions are "just," including dismissal, may be used against a party who "fails to obey an order to provide or permit discovery...." *United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636, 641 (1st Cir.1988). The decision to sanction and choice of sanction lie within the discretion of the district court. *Id. See also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747, (1976); *Spiller v. U.S.V. Laboratories Inc.,* 842 F.2d 535, 536–37 (1st Cir.1988); *Farm Construction Services v. Fudge,* 831 F.2d 18, 20 (1st Cir.1987).

A variety of important considerations include, "[T]he severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." *Benítez–García v. González–Vega,* 468 F.3d 1, 5 (1st Cir. 2006); *Robson v. Hallenbeck,* 81 F.3d 1, 2–3 (1st Cir.1996); Fed.R.Civ.P. 37(b)(2).

█ Furthermore, the First Circuit has recognized that failure of a plaintiff to prosecute or comply with any court order is grounds for dismissal with prejudice. Disobedience of court orders can in and of itself be extreme misconduct warranting the sanction of dismissal with prejudice. *Tower Ventures, Inc. v. City of Westfield,* 296 F.3d 43, 46 (1st Cir.1987); *Torres–Vargas v. Pereira,* 431 F.3d 389, 392 (1st Cir.2005) (the Court of Appeals for the First Circuit affirmed a trial court's discretion to dismiss a case with prejudice for failure to comply with court orders). *See, Abdullah v. Acands, Inc.,* 30 F.3d 264 (1st Cir.1994); *Kuehl v. F.D.I.C.,* 8 F.3d 905 (1st Cir.1993) (affirming dismissal with prejudice where magistrate judge alerted plaintiffs to deficiencies in complaint, but plaintiffs failed to remedy them); Fed. R.Civ.P. 41(b). However, since it is a harsh sanction, dismissal with prejudice "should be employed only when a plaintiff's misconduct has been extreme." *Figueroa Ruiz v. Alegría,* 896 F.2d 645, 647 (1st Cir.1990) (affirming district court's dismissal of an action with prejudice where plaintiffs filed a deficient complaint, failed to respond to motions to dismiss, and failed to comply with a court order calling for explication of factual underpinnings of complaint); *see also Richman v. General Motors Corp.,* 437 F.2d 196, 199 (1st Cir. 1971). The Court of Appeals for the First Circuit has often affirmed a trial court's discretion to dismiss a case with prejudice for failure to comply with court orders. *See, e.g., Torres–Vargas v. Pereira,* 431 F.3d 389, 392 (1st Cir.2005).

"[D]ismissal with prejudice is a harsh sanction, ... which should only be employed when a Plaintiffs' [sic] misconduct has been extreme, ... and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." *Estate of Solís–Rivera v. United States,* 993 F.2d 1, 2 (1st Cir.1993).

█ Although prior notice is not prerequisite to dismissal with prejudice for failure to comply with an order, or for failure to prosecute, it is an important consideration.

█ In the instant case, plaintiff Meléndez has been apprised on numerous occasions that his lack of diligence, his failure to comply with the orders of the court, and his challenged attitude in not making himself available for depositions, were to be subject of sanctions, including dismissal.

A thorough review of the record in the present case shows plaintiff's consistent failure to comply with the discovery and orders of this Court even though he was admonished of the consequences of his further non-compliance. It is evident the Court provided ample opportunity and admonishments to plaintiff Meléndez as to the type of sanctions which could be imposed.

We need go no further. In consideration of the historical trend followed by plaintiff Meléndez in this case, it is recommended that co-defendants' requests for dismissal be **GRANTED.**

## CONCLUSION

In view of the foregoing, it is recommended that the pending Motions to Dismiss **(Docket Nos. 83, 84, 117)** be **GRANTED.**

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").